UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAWN BROOKS,

              Plaintiff,

    v.

SKAGIT COUNTY PUBLIC HEALTH et al.,

              Defendants.

CASE NO. 2:23-cv-01708-LK

ORDER DISMISSING AMENDED COMPLAINT

This matter comes before the Court sua sponte following Plaintiff Fawn Brooks' filing of an amended complaint. Dkt. No. 7. Ms. Brooks, who is proceeding pro se and *in forma pauperis* ("IFP"), seeks money damages and an injunction arising from Defendants' denial of her application for emergency rental assistance. *See id.* at 4, 14. For the reasons discussed below, the Court dismisses her complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.    BACKGROUND

On November 9, 2023, United States Magistrate Judge Brian A. Tsuchida granted Ms. Brooks' application to proceed IFP. Dkt No. 4. On November 15, 2023, after screening her

complaint pursuant to 28 U.S.C. § 1915(e), the Court declined to issue summons, dismissed Ms.

Brooks' initial pleading without prejudice for failure to state a claim, and permitted her leave to

file an amended complaint within 30 days. Dkt. No. 6 at 3–4. The Court explained that although

Ms. Brooks may have a viable claim against one or more of the named Defendants, "the allegations

contained in the complaint [we]re too vague and conclusory to give rise to an inference of unlawful

conduct or to allow Defendants to effectively respond." *Id.* at 3. In addition, the Court cautioned

Ms. Brooks that she may be legally barred from seeking relief from a state agency for constitutional

violations. *Id.*

On December 13, 2023, Ms. Brooks timely filed an amended complaint. Dkt. No. 7 at 1.[1]

She alleges that she is "a single person of low income" who, on or about August 17, 2022, applied

for a federally funded Emergency Rental Assistance ("ERA") program[2] through "the Skagit

Portal," but was denied as a "result of not being of high . . . importance to help because of race and

internal interference." Dkt. No. 7 at 4–5, 12; *see also id.* at 1 ("This is a claim . . . for the cause of

16 months of personal injury of [e]xtreme [e]motional distress by denying her a Federal statutory

program with discriminatory intent[.]"); *id.* at 6 ("Despite Brooks['] repeat distressed emails,

attempts and even case number assignment, [f]rom August 2022–June 2023 Brooks was not able

to benefit from ERAP 2.0, Skagit ERPP," and other housing assistance resources). This denial

"created very high stress levels" for her, exacerbated her mental health symptoms, and damaged

her relationship with her landlord which "will result in an eviction from her home of 7 years and

make it difficult to attain new housing." *Id.* at 4; *see also id.* at 12.

---

[1] Ms. Brooks' amended complaint names the same five Defendants as her initial complaint, all of whom she alleges were "working under the American Rescue Act of 2021": (1) Skagit County Public Health; (2) Community Action of Skagit County; (3) Washington Department of Commerce; (4) Geocko, Inc., d.b.a. Livestories, Inc.; and (5) Allysen Yamauchi, in her "official and individual capacity." *See id.* at 2–4; Dkt. No. 5 at 2–3.

[2] *See* U.S. Dep't of Treasury, *Emergency Rental Assistance Program*, https://home.treasury.gov/policy-issues/coronavirus/assistance-for-state-local-and-tribal-governments/emergency-rental-assistance-program (last visited Jan. 12, 2024).

Ms. Brooks takes issue with several aspects of how Defendants handled her application for the emergency eviction prevention relief established by the federal government in response to the COVID-19 pandemic. She questions Livestories' authority—as "a tech/software company"—to approve or deny such applications, and asserts that its decision to deny her application due to her "landlord's nonparticipation" does not comport with the requirements under the relevant statute, 15 U.S.C. § 9058a. *Id.* at 5. She also describes in more detail her communications with two staff members of Defendant Community Action, a local housing assistance resource in Skagit County: Eviction Prevention Specialist Noemi Ramirez and Defendant Yamauchi, a housing coordinator at the organization. *See id.* ("Brooks emailed Ramirez about [her] current Mental Health crisis, job loss, and the impact of denial," and "sent a complaint to [Community Action] on 10/26/2022 and exchanged emails with Yamauchi [on] Oct 26, 27, 28, Nov 1, 2, 3, and 7, without any resolve"). Ms. Brooks alleges that Yamauchi told her that "the requests from [Livestories were] approved by both Skagit County and Commerce" but that Community Action "would not accept [her] self-attestation forms[.]" *Id.*; *see also id.* at 6 (Livestories was "authorized by Skagit and Commerce to make final approval and flagged Brooks' application without due process or investigating"). With respect to the overall process, she avers that Livestories' "standard practice only allows a 5-day appeal and grievance window where 30–90 days is standard among these types of funds," and that Community Action and Livestories did not follow the statutory guidelines for "establish[ing] policies and procedures to govern the implementation of their ERA programs[.]" *Id.* at 6; *see also id.* ("On 01/17/23 Brooks emailed Yamauchi inquiring of other housing programs for help and was unanswered.").

Further, Ms. Brooks once again alleges that "Yamauchi and another director ha[ve] a conflict of interest with a very adverse party to her personal rental situation." *Id.*; *see* Dkt. No. 5 at 5. And she also re-alleges that "White Americans were excluded in [the] Skagit, [Community

1   Action], [Livestories], and Commerce [s]cope of work contracts." Dkt. No. 7 at 5; *see* Dkt. No. 5

2   at 4. Based on these allegations, Ms. Brooks claims that

> Defendants, by and through employees, and staff, breached the standard of care
> owed to [her] by: 1) failing to intervene where due process was proper[;] 2) failing
> to recognize the deprivation's extreme results of homelessness[;] 3) [f]ailing to
> include white Americans in scope of work[;] 4) allowing unauthorized criteria to
> adversely block her approval[;] 5) [i]gnoring Brooks['] complaints[; and]
> 6) violations for serious conflicts of interest.

Dkt. No. 7 at 6–7. As in her initial complaint, she invokes Title VI of the Civil Rights Act of 1964,

42 U.S.C. § 2000d *et seq.*, the Fourteenth Amendment, 42 U.S.C. § 1983, and Section 4.96.020 of

the Revised Code of Washington. *Id.* at 7–11; *see* Dkt. No. 5 at 5–10. She asserts causes of action

for negligent infliction of emotional distress, abuse of power, and negligence, and also argues that

Community Action is "barred from a defense." Dkt. No. 7 at 7–11.

## II.   DISCUSSION

### A.   Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

because Ms. Brooks alleges constitutional violations under 42 U.S.C. § 1983 and statutory

violations under the Civil Rights Act of 1964. *See* Dkt. No. 7 at 7–9. To the extent she alleges any

state law claims, the Court has supplemental jurisdiction over such claims under 28 U.S.C.

§ 1367(a).

### B.   Section 1915(e)(2)(B)

Like her original complaint, Ms. Brooks' amended complaint requires a pre-answer

screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Section 1915 directs the Court to dismiss an IFP

plaintiff's case "at any time" if it determines that the complaint is frivolous, fails to state a claim

on which relief may be granted, or seeks monetary relief against a defendant who is immune from

such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Section 1915(e) applies to all IFP proceedings, not

ORDER DISMISSING AMENDED COMPLAINT - 4

just those filed by prisoners, *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc), and the standard for determining whether a plaintiff has failed to state a claim under Section 1915(e) is the same as the standard applied under Federal Rule of Civil Procedure 12(b)(6), *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

And although "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), pro se litigants still must set forth factual content sufficient to give rise to the reasonable inference that the defendants are liable for the misconduct alleged, *see* Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**C.    Ms. Brooks' Amended Complaint Fails to State a Claim on Which Relief May Be Granted**

In her amended complaint, Ms. Brooks does more to fill in the blanks beyond conclusory assertions, but nevertheless fails to state a claim upon which relief may be granted. Accordingly, for the reasons discussed below, the Court declines to issue a summons in this matter, dismisses the amended complaint without prejudice, and grants Ms. Brooks one final opportunity to cure the deficiencies identified herein. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (cleaned up)).

1        1.   Title VI of Civil Rights Act of 1964

2        Ms. Brooks' first cause of action is for violations of Title VI of the Civil Rights Act of

3    1964, 42 U.S.C. § 2000d *et seq.*, based on Defendants' alleged "exclusion of white Americans" in

4    the "scope of work" contracts related to the Skagit County ERA program. Dkt. No. 7 at 5, 7–8,

5    21–22.[3] The scope of work attached to her amended pleading provides that "[c]ontractor shall

6    promote racial equity in who is served, with a focus on equity for groups of people who historically

7    have not been provided equitable access to rent assistance and those who have disproportionately

8    been impacted by the COVID-19 outbreak[.]" Dkt. No. 7 at 21–22; *see id.* at 22 (listing as

9    examples: "Latinx or Hispanic, young adults, Black or African American, American Indian,

10   Alaska Native, Native Hawaiian or Pacific Islander"). In addition, the document states that

11   "[c]ontractor shall ensure equitable access to ERAP 2.0," which means "that the race and ethnicity

12   of people entering ERAP 2.0 are similar to the community demographics." *Id.* at 22.

13       Title VI of the Civil Rights Act states that "[n]o person in the United States shall, on the

14   ground of race, color, or national origin, be excluded from participation in, be denied the benefits

15   of, or be subjected to discrimination under any program or activity receiving Federal financial

16   assistance." 42 U.S.C. § 2000d. Plaintiffs may seek damages and injunctive relief to remedy

17   violations of Title VI. *See* 42 U.S.C. § 2000d-7(a)(1)-(2); *Alexander v. Sandoval*, 532 U.S. 275,

18   279 (2001). However, Section 2000d prohibits only intentional discrimination. *Sandoval*, 532 U.S.

19   at 280–81. To state a claim for damages under Title VI, "a plaintiff must allege that (1) the entity

20   involved is engaging in racial discrimination; and (2) the entity involved is receiving federal

21

22   [3] Ms. Brooks does not argue that Congress intended to create a private right of action when enacting 15 U.S.C. § 9058a, and most courts that have considered this issue have found that no such right exists. *See, e.g., Turner v. Westfield*

23   *Washington Twp.*, No. 22-1969, 2022 WL 17039087, at *1 (7th Cir. Nov. 17, 2022); *Wexler v. Dep't of Child. & Fams.*, No. 6:22-CV-1111-RBD-DCI, 2022 WL 5250140, at *1–2 (M.D. Fla. Sept. 19, 2022), *report and*

24   *recommendation adopted*, 2022 WL 5245336 (M.D. Fla. Oct. 6, 2022). Thus, any claims based purely on Defendants' failure to comply with this statute are dismissed. *See, e.g.*, Dkt. No. 7 at 9.

financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc).[4]

Ms. Brooks appears to have sufficiently alleged that Defendants were receiving federal financial assistance at the time of the complained-of conduct. *See* Dkt. No. 7 at 3–4, 7; 42 U.S.C. § 2000d-4a(1). With respect to racial discrimination, however, Ms. Brooks' allegations do not give rise to a plausible inference of a Title VI violation. She contends that in light of the "scope of work" language quoted above, Defendants discriminated against "white Americans" like herself when processing ERA applications. Dkt. No. 7 at 5–8. Without more, such conclusory allegations—i.e., that white Americans were excluded because the ERA program sought to promote racial and ethnic equity—does not actually suggest that she, or any other white applicant, was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination based on their race. *See, e.g.*, *Mendoza v. Inslee*, No. 3:19-CV-06216-BHS, 2020 WL 1271574, at *4 (W.D. Wash. Mar. 17, 2020) ("Although plaintiff's complaint is filled with conclusory allegations of discrimination, she does not plausibly allege facts to support that any particular defendant purposely discriminated against her[.]"); *Webb v. Busey*, No. 3:22-CV-5030-DGE, 2022 WL 306071, at *2 (W.D. Wash. Feb. 2, 2022) (same).

Ms. Brooks' Title VI claim is therefore dismissed without prejudice, and any amended pleading should provide additional facts explaining what happened during her application process such that she believes she was denied or discriminated against on the basis of her race. *See Trask, v. R.C. Willey*, No. 1:23-CV-00442-BLW, 2023 WL 8372480, at *2 (D. Idaho Dec. 4, 2023)

---

[4] Courts in this district have generally found that private Title VI claims are not permitted against individual defendants sued in their individual capacity such as Yamauchi. *See, e.g.*, *Webb v. Dep't of Soc. & Health Servs.*, No. 3:21-CV-05761-TL-JRC, 2021 WL 9037644, at *2 (W.D. Wash. Dec. 28, 2021*), report and recommendation adopted*, 2022 WL 1831048 (W.D. Wash. June 3, 2022).

1    ("These additional facts need not be overly detailed, but they must provide enough information for

2    the Court to evaluate whether the claim is plausible. The mere allegation of racial discrimination,

3    without more, is not enough.").

4        2. <u>Section 1983</u>

5        "Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or

6    immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp.*

7    *Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To establish liability under Section

8    1983, "a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws

9    of the United States, and (2) that the deprivation was committed by a person acting under color of

10   state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quoting *Chudacoff*

11   *v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)); *see also Graham v. Connor*,

12   490 U.S. 386, 393–94 (1989) (Section 1983 "is not itself a source of substantive rights, but merely

13   provides a method for vindicating federal rights elsewhere conferred" (cleaned up)). Vague or

14   conclusory allegations of participation in civil rights violations, however, are insufficient to

15   support a claim under Section 1983. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

16       Local governing bodies can be sued directly under Section 1983 for monetary, declaratory,

17   or injunctive relief where the unconstitutional deprivation "implements or executes a policy

18   statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

19   officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "Under

20   *Monell*, plaintiffs suing a municipal entity for damages under 42 U.S.C. § 1983 'must show that

21   their injury was caused by a municipal policy or custom.'" *Sabra v. Maricopa Cnty. Cmty. Coll.*

22   *Dist.*, 44 F.4th 867, 883 (9th Cir. 2022) (quoting *Los Angeles Cnty. v. Humphries*, 562 U.S. 29,

23   30–31 (2010)). *Monell* liability generally occurs in "three situations: when the plaintiff was injured

24   pursuant to an expressly adopted official policy; a long-standing practice or custom; or the decision

1    of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013)

2    (quotation marks omitted); *accord Gordon v. Cnty. of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021).

3        Although Ms. Brooks' amended complaint appears to cite Defendants' policy or custom as

4    theories of *Monell* liability, the "first inquiry" in any suit pursuant to Section 1983 "is whether the

5    plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Benavidez v. Cnty.*

6    *of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting *Baker v. McCollan*, 443 U.S. 137, 140

7    (1979)). The Court liberally construes Ms. Brooks' constitutional claims under Section 1983 as

8    arising under the Due Process Clause of the Fourteenth Amendment. *See* Dkt. No. 7 at 7–11. In

9    addition, the Court assumes without deciding that the nonprofit and individual Defendants were

10   acting under color of state law by virtue of their implementation of the federal COVID relief

11   program, i.e., performing a public function. *See, e.g.*, *James v. FPI Mgmt., Inc.*, No. C22-0336-

12   JLR, 2022 WL 1499590, at *5 (W.D. Wash. May 11, 2022) (setting forth standard for state actor

13   test); *Lengele v. Willamette Leadership Acad.*, 641 F. Supp. 3d 956, 961 (D. Or. 2022) (same).[5]

14   For the reasons below, the Court finds that Ms. Brooks does not sufficiently allege that she has

15   been deprived of a constitutional right by Defendants, and therefore does not analyze whether she

16   has stated a claim under *Monell*.

17                    (a) *Due Process Under the Fourteenth Amendment*

18                        (i)  Procedural Due Process

19        The Fourteenth Amendment's Due Process Clause prohibits the government from

20   depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend.

---

[5] Ms. Brooks' citation to 42 U.S.C. § 2000d-7, Dkt. No. 7 at 8, 13, does not support the proposition that the Washington Department of Commerce, an arm of the state, is without Eleventh Amendment immunity for alleged constitutional violations under Section 1983. *See e.g.*, *Monell*, 436 U.S. at 690 n.54; *Nelson v. Cal. Emp. Dev. Dep't*, No. 21-CV-2145-JAH-MDD, 2022 WL 687150, at *4 (S.D. Cal. Mar. 8, 2022); *Mayorga v. Washington*, No. C17-0934-RSL, 2018 WL 1792195, at *2 (W.D. Wash. Apr. 16, 2018). Accordingly, the Court dismisses with prejudice any Section 1983 claims against the Washington State Department of Commerce. *See, e.g.*, *Stoner v. Arizona*, No. CV-23-01065-PHX-SMM, 2023 WL 4297651, at *3 (D. Ariz. June 30, 2023); *Leigh v. Dep't of Lab. & Industries[]*, No. 3:20-CV-6254-BHS, 2021 WL 135868, at *3 (W.D. Wash. Jan. 14, 2021).

XIV § 1. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To plead a procedural due process claim, a plaintiff must allege two elements: (1) the plaintiff has a constitutionally protected "liberty or property interest which has been interfered with by the State"; and (2) the procedures employed to deprive the plaintiff of that liberty or property interest were constitutionally deficient. *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *accord Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

To have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Here, taking all factual allegations as true, Ms. Brooks plausibly alleges that she qualified for and was entitled to receive ERA relief, satisfying the first element of a procedural due process claim. *See* Dkt. No. 7 at 4–5, 17; *see also, e.g.*, *Jeffries v. Maryland Dep't of Hous. & Cmty. Dev.*, No. 8:22-CV-00526-AAQ, 2023 WL 6976066, at *3 (D. Md. Oct. 23, 2023). However, Ms. Brooks fails to adequately set forth how Defendants' procedures with respect to her application were constitutionally deficient. *See Al-Farouk v. Nelson*, No. 2:23-CV-01372-CDS-VCF, 2023 WL 6794224, at *2 (D. Nev. Oct. 13, 2023) ("While plaintiff is unhappy with the result, this by itself does not render the procedural process inadequate."). She alleges that a Livestories agent requested documentation from her landlord, and that her application was then denied due to her landlord's nonparticipation, and also that Community Action would not accept the "self-attestation forms" used for a previous grant. Dkt. No. 7 at 5.[6] She further claims that Livestories had authorization to issue final approval for

---

[6] Ms. Brooks attaches exhibits to her complaint that suggest her application was denied for failing to submit requested financial documentation such as paystubs. *Id.* at 17, 20; *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009) (courts accept material factual allegations as true and construe them in the light most favorable to the plaintiff, but "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual

1   her application but "flagged" it "without due process or investigating," and that Livestories'

2   "standard practice only allows a 5-day appeal and grievance window[.]" Dkt. No. 7 at 6.

3          In short, the portions of Ms. Brooks' amended complaint targeting Livestories and

4   Community Action for procedural due process violations contain insufficient non-conclusory

5   factual allegations regarding *how* or *why* these organizations' actions deprived her of appropriate

6   procedural safeguards. *Id.* at 8–9; *see also, e.g.*, *Van Den Heuvel v. Dorothy*, No. 2:21-CV-2176-

7   TLN-CKD-PS, 2022 WL 95237, at *4–5 (E.D. Cal. Jan. 10, 2022) (dismissing procedural due

8   process claim where plaintiff failed to adequately explain what process he was or was not afforded

9   by the defendant either before or after the alleged deprivation). For example, she claims that

10  Livestories' five-day appeal deadline shows "callousness over the outcome of households facing

11  homelessness," but does not state whether she in fact appealed or attempted to appeal the

12  organization's decision. Dkt. No. 7 at 9. And her other allegations in support of this claim are

13  wholly conclusory. *See, e.g.*, *id.* at 10 ("Defendants denying Brooks without procedural due

14  process put her in a position to lose her home and cause the deprivation, a direct violation of the

15  14th amendment . . . 'Due Process Clause.'").

16         Accordingly, the Court dismisses Ms. Brooks' procedural due process claim without

17  prejudice. In any amended pleading, Ms. Brooks must provide specific factual allegations

18  explaining when and how her application was denied, whether she was able to respond to or appeal

19  the denial, and what specific elements of Defendants' procedures infringed on her constitutional

20  protections.

21

22

23

24  allegations" and are not "required to accept as true conclusory allegations that are contradicted by documents referred
    to in the complaint").

1                    *(ii)* Substantive Due Process

2           Ms. Brooks' amended complaint also "brings forth a Claim of State Created Danger by

3 Negligence." Dkt. No. 7 at 10; *see also id.* at 13. The Court construes this claim as rooted in the

4 substantive element of the Fourteenth Amendment's Due Process Clause.[7] As the Ninth Circuit

5 recently explained, "[t]he Due Process Clause is a *limitation* on state action rather than a *guarantee*

6 *of minimum levels* of state protections[.]" *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir.

7 2023). However, there is an exception to this rule "when the state affirmatively places the plaintiff

8 in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created

9 danger exception)[.]" *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (quoting *L.W.*

10 *v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). The state-created danger exception has two prongs:

11 "First, the exception applies only where there is affirmative conduct on the part of the state in

12 placing the plaintiff in danger. Second, the exception applies only where the state acts with

13 deliberate indifference to a known or obvious danger." *Murguia*, 61 F.4th at 1111 (cleaned up).

14 To meet this first requirement, a plaintiff must show that the defendant's "affirmative actions

15 created or exposed him to an actual, particularized danger that he would not otherwise have faced."

16 *Id.* (cleaned up); *see also Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir.

17 2000) ("[W]e examine whether the officers left the person in a situation that was more dangerous

18 than the one in which they found him."). With respect to the second requirement, deliberate

19 indifference is a "stringent" standard that "is higher than gross negligence and requires a culpable

20 mental state." *Murguia*, 61 F.4th at 1111. "For a defendant to act with deliberate indifference, he

21 must recognize the unreasonable risk and actually intend to expose the plaintiff to such risks

22

23 ――――――――――――――――
[7] To the extent Ms. Brooks alleges state law claims for negligence or negligent infliction of emotional distress, *see id.*
at 7, 10, such claims fail because she does not plead with any specificity the duty Defendants owed to her, *see, e.g.*,
24 *Leishman v. Washington Att'y Gen.'s Off.*, No. 2:20-CV-861-JNW, 2023 WL 7166183, at *11–12 (W.D. Wash. Oct.
31, 2023), *reconsideration denied*, 2023 WL 8879127 (W.D. Wash. Dec. 22, 2023).

without regard to the consequences to the plaintiff"; in other words, "to know that something is going to happen but ignore the risk and expose the plaintiff to it." *Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158–59 (9th Cir. 2021) (cleaned up).

Ms. Brooks' amended complaint does not plausibly allege either requirement. First, she does not allege any affirmative action on the part of Defendants that put her in a different, more dangerous position than she was already facing. In other words, Ms. Brooks would be facing eviction with or without Defendants' denial, and it is Defendants' *inaction*, or failure to grant relief, that she seeks to challenge. *See* Dkt. No. 7 at 6. Likewise, although Ms. Brooks alleges that Defendants Livestories and Yamauchi "demonstrated reckless disregard [for her] risks of eviction and mental health status when failing to act and carry out the [ERA] program[']s purpose," *id.* at 10, such conclusory allegations do not plausibly establish a culpable mental state and are insufficient to support a claim under Section 1983. *See Ivey*, 673 F.2d at 268. Thus, Ms. Brooks' state-created danger claim is also dismissed.

3.   Ms. Brooks' Remaining Claims Are Insufficiently Pleaded

Liberally construing Ms. Brooks' amended complaint, the Court discerns two other possible claims related to (1) Yamauchi's purported conflict of interest and (2) Community Action's apparent waiver of a defense under Section 4.96.020 of the Revised Code of Washington. Dkt. No. 7 at 9, 11. Neither claim is sufficiently pleaded and therefore both claims are also dismissed.

(a)   *Yamauchi's Conflict of Interest*

Ms. Brooks alleges that "Yamauchi and another director ha[ve] a conflict of interest with a very adverse party to her personal rental situation," *id.* at 6 (citing *id.* at 23), and that "Yamauchi in her position of authority . . . ultimately abused her position of power to prevent county wide

1    knew of allowed [sic] the denial without due process or equal protection[ i]n violation of 18 U.S.C.

2    § 208," *id.* at 9.

3         As a threshold matter, Ms. Brooks' citation to 18 U.S.C. § 208 is unavailing both because

4    it is a criminal statute and because it does not appear to apply to non-federal employees. *See Aldabe*

5    *v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam) ("[C]riminal provisions . . . provide

6    no basis for civil liability."); *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir.

7    2006). Moreover, these allegations lack the specificity for the Court and Defendants to understand

8    what is being alleged. *See* Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

9    To the extent Ms. Brooks wishes to re-allege a claim here, she should include specific, non-

10   conclusory factual allegations regarding Yamauchi's purported "conflict" such that Yamauchi and

11   the Court will be able to understand the legal claim asserted.

12              *(b) Section 4.96.020(2) of the Revised Code of Washington*

13        Similarly, the Court is unable to decipher Ms. Brook's fourth claim, "Defendant

14   [Community Action] barred from a defense," which cites to Section 4.96.020(2) of the Revised

15   Code of Washington. Dkt. No. 7 at 11. This statute relates to notice of claims for "[t]ortious

16   conduct of local governmental entities and their agents," Wash. Rev. Code § 4.96.020, but it is

17   "well settled that state notice of claim provisions are inapplicable to § 1983 actions." *Bos. v. Kitsap*

18   *Cnty.*, 852 F.3d 1182, 1185 (9th Cir. 2017). In any event, Ms. Brooks' pleading appears

19   incomplete. *See, e.g.*, Dkt. No. 7 at 11 ("Plaintiff brings forth [a] claim for which [Community

20   Action] is barred from raising a defense to this claim, pursuant to RCW 4.96.020(2) for failure to

21   comply with the requirements of tortious [sic]. . . . Entities are required to have available and

22   accessible [sic][.]"). If Ms. Brooks intends to claim that Community Action "has waived its right

23   to any defenses available in such law" by failing to "make available on its website" the information

24   required under this state statute, *id.*, she must include specific factual allegations in support of such

1   a claim and also explain why this statute applies in this case. *Cf. Cronk v. City of W. Richland*, No.

2   4:14-CV-5041-EFS, 2015 WL 853863, at *3 (E.D. Wash. Feb. 26, 2015).

3   **D.     Ms. Brooks is Granted Leave to Amend**

4          Even though the Court is once again dismissing Ms. Brooks' complaint for failure to state

5   a claim, it will grant her one final opportunity to cure the deficiencies identified herein. *See Lucas*

6   *v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) ("Unless it is absolutely clear that

7   no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's

8   deficiencies and an opportunity to amend prior to dismissal of the action."). However, the Court

9   cautions Ms. Brooks to thoroughly review this Order and to ensure that any amended pleading

10  addresses the issues it has identified in her amended complaint.

11                                  **III.   CONCLUSION**

12          For the foregoing reasons, the Court ORDERS as follows:

13      1.   Any claims under 42 U.S.C. § 1983 against Defendant Washington State Department

14           of Commerce are DISMISSED with prejudice.

15      2.   The remainder of Ms. Brooks' amended complaint is DISMISSED without prejudice

16           and with leave to amend by February 12, 2024. A timely filed amended complaint

17           operates as a complete substitute for an original pleading. *See Ferdik v. Bonzelet*, 963

18           F.2d 1258, 1262 (9th Cir. 1992).

19      3.   In accordance with this Order, any amended complaint must clearly identify the

20           defendant(s), the claim(s) asserted, the specific facts that Ms. Brooks believes support

21           each claim, and the specific relief requested.

22

23

24

1   4.   This is Ms. Brooks' final opportunity to cure her pleading. If she does not file a second

2        amended complaint by February 12, 2024 that cures the deficiencies identified herein,

3        this action will be dismissed with prejudice.

4

5   Dated this 16th day of January, 2024.

6

7                                        Lauren King
                                         United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DISMISSING AMENDED COMPLAINT - 16